UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAPERVILLE SMART METER AWARENESS, an Illinois not-for-profit corporation, MARGARET MARY WOOD, SCOTT J. DERENGOWSKI, KIMBERLEY WELLS HAMILTON, JO MALIK, JENNIFER STAHL, TOM GLASS, KIM BENDIS, GLENN A. MENDOZA, and AMANDA RYKOV, <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF NAPERVILLE, <br><br>Defendant. | Case No. 11-cv-9299 <br><br>Honorable John Z. Lee |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Naperville Smart Meter Awareness, Margaret Mary Wood, Scott J. Derengowski, Kimberley Wells Hamilton, Jo Malik, Jennifer Stahl, Tom Glass, Kim Bendis, Glenn A. Mendoza, and Amanda Rykov, by and through their counsel of record, file this Response in Opposition to Defendant's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 Regarding Plaintiffs' Motion for Preliminary Injunction. For the reasons that follow, this Court must deny Defendant's Motion for Sanctions ("Defendant's Motion").

**OPENING STATEMENT**

The City of Naperville ("Defendant") has filed a wholly frivolous Motion for Sanctions which is so disingenuous and so poorly prepared - its filing has now introduced legitimate Rule 11 concerns into this case.

The Judicial Conference's Advisory Committee on Civil Rules has stated, "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable..." Fed R. Civ. P. 11 Advisory Committee Note (1993).

Defendant's Motion is inconsistent with the purpose and intent of Rule 11. Defendant offers no evidence that Plaintiffs have engaged in improper litigation tactics, bad faith or willful misconduct, or conduct which abused the judicial process. Rather, Defendant's Motion for the most part merely rehashes its Motion to Dismiss filed on April 17, 2012.

Defendant's Motion is almost completely devoid of analysis or justification as to why Rule 11 should apply in this case. Defendant's Motion ¶ 27 states "The accompanying Memorandum of Law more fully sets forth the reasons that support the Defendant's Motion for Sanctions. But then turning to the Memorandum of Law, Defendant states on page 5, "Defendant's arguments in its Motion ofr [sic] Sanctions clearly delineate the infirmities of Plaintiffs [sic] claims under the law and provide ample legal grounds for a finding that the Plaintiffs cannot succeed on the merits." Defendant's own documents make competing promises (in effect "just see the other document"), but the promised support never comes.

Defendant's Motion is less of a professionally prepared legal document, and more of a personal screed directed at attacking the integrity and impugning the motives of Plaintiffs and their counsel. Not only does Defendant's Motion inappropriately and inexplicably

assume theories regarding the Plaintiffs' motives and state of mind – something Defendant cannot possibly know with certainty – but the theories Defendant does expound are absurd and insulting. Defendant's Motion is just the latest desperate attempt by Defendant to distract this Court from Plaintiffs' legitimate legal claims which Defendant simply doesn't want to address on the merits.

It is beyond ridiculous for Defendant to claim as it has in its Motion that Plaintiffs brought this action "solely to needlessly increase the cost of litigation and harass the City . . ." Defendant's Motion ¶ 25. Defendant provides no basis or support for the reckless claim, and of course Defendant could never produce such evidence. The claim is blatantly false and Defendant knows it.

Plaintiffs do not want to be in federal court. What normal person would? Plaintiffs – including the hundreds, if not thousands, of Naperville residents represented by Naperville Smart Meter Awareness – are regular people. Unlike Defendant, Plaintiffs do not have taxpayer funded lawyers on staff. Every dollar a Plaintiff spends on this litigation is one less dollar she or he has to spend on a child or other needed expenditure. Most of the Plaintiffs have never been involved in litigation before. Plaintiffs have jobs and families - and with all due respect to this Court – Plaintiffs would prefer to be somewhere else this summer than in a courtroom in downtown Chicago.

Plaintiffs are here for one reason and one reason only. They have legitimate and significant fears about smart meters. Defendant can mock and try to diminish those concerns all it wants, but the tactics used by Defendant are telling. Not only does Defendant completely ignore the relief and protections being afforded citizens in other jurisdictions all across the country, but it's remarkable to note that Defendant can still point to no guarantee

or credible scientific study proving that smart meters are safe and/or free of privacy and security concerns. All we have are Defendant's self-serving, conclusory statements.

In many cases, a Plaintiff's main concern in this case is not even about herself or himself. Many of the Plaintiffs in this case are most concerned about their children's health and safety. Privacy and security are major concerns and Plaintiffs have appropriately set forth those claims. But for many Plaintiffs it's the health risks to themselves and their children that forced them to pursue this action. As Plaintiffs have previously noted, "Whether or not you believe RF [radio frequency] exposures from smart meters are harmful, it's only fair that consumers who are concerned about health effects be given complete technical information and the choice of another technology for devices that are installed at their homes." Am. Compl. ¶ 42, quoting California State Representative Jared Huffman in a January 10, 2011, interview with *The New York Times*.

Plaintiffs take this lawsuit very seriously and have devoted significant time and research towards setting forth the legal claims and supporting documentation which are included in Plaintiffs' First Amended Complaint for Injunctive Relief, Motion for Preliminary Injunction, Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss and Reply in Support of Plaintiffs' Motion for Preliminary Injunction, and Motion to Supplement the Record of Plaintiffs' Motion for Preliminary Injunction. Plaintiffs believe their filings already made with this Court are more than satisfactory to demonstrate the validity and strength of their case, and are similarly sufficient to demonstrate the frivolous nature of Defendant's Motion for Sanctions. Plaintiffs have an objective good faith basis for all positions taken in this case. Discovery will of course further bolster Plaintiffs' claims.

Rule 11 should not be used "to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories" (Fed R. Civ. P. 11 Advisory Committee Note (1983); see also *Brown v. Federation of State Medical Boards of United States*, 830 F.2d 1429, 1437 (7th Cir. 1987)). Therefore, where an argument or a motion has a colorable basis under the factual record in the case, and either under existing law or via a proposed extension or modification of existing law, it should not be sanctionable. See *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31 (9th Cir.1986).

## ARGUMENT

Defendant makes the astounding claim that "Plaintiffs' request is unprecedented [and] finds no support in the law." Defendant's Motion ¶ 2. Even if Defendant was unwilling to do its own research and inquiry, Plaintiffs' previous filings gave Defendant plenty of notice as to the absolute falsity of Defendant's representation to this Court.

Smart meters are a new and unproven technology and related litigation has only recently begun working its way through the courts and administrative agencies. However, the privacy issues at stake for example are not dissimilar from the new technologies the U.S. Supreme Court addressed in *United States v. Jones*, 565 U.S. ___ (2012) and *Kyllo v. United States*, 533 U.S. 27 (2001). Plaintiffs discussed these and related cases in their Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (pp. 4- 8).

Further, Adam Asquith, a *pro se* plaintiff in Hawaii filed a complaint in U.S. District Court, District of Hawaii on March 16, 2012, that was almost entirely modeled (with Plaintiffs' blessing) on Plaintiffs' Complaint for Injunctive Relief. At the first hearing in that case, the defendant Kauai Island Utility Cooperative agreed that it would "indefinitely defer" smart meter installations for those who oppose the technology, including of course for

5

plaintiff Adam Asquith. *Asquith v. Kauai Island Utility Cooperative*, 12-cv-00134-HG-RLP (D. Haw. 2012). So not only is Defendant's representation to this Court regarding the state of the law entirely incorrect, but a nearly identical federal lawsuit filed in Hawaii this year resulted in the plaintiff almost immediately achieving the relief he sought. Again, Defendant has ample notice of the *Asquith* case but chose to completely ignore its existence in its latest filing with this Court.

Defendant also had ample notice of another case currently being litigated in the Maine Supreme Judicial Court, *Friedman v. Maine Public Utilities Comm.*, Law Docket No. PUC-11-532. The state's Supreme Judicial Court heard oral arguments in that case on May 10, 2012, and the parties await a ruling. The plaintiff in *Friedman* brought constitutional claims based on safety, health, privacy, and property interests that are very similar to those brought by Plaintiffs in the instant case. *Friedman* was brought in state court, because unlike the instant case, the plaintiff in *Friedman* is a customer of an investor owned utility which is under the jurisdiction of Maine's public utility regulator.

Smart meter installation in Maine is nearly complete. Further, unlike the situation in Naperville where customers do not even have a true opt-out option (all customers of Defendant are being forced to accept a so-called smart meter), any customer in Maine already has available to him or her a true opportunity to opt-out. Any customer can elect to keep an existing analog meter. Not only can any customer reject a smart meter, but the penalty for doing so is perhaps the lowest in the nation at $10 per month.

In other words, even before *Friedman* is decided, electric customers in Maine are already in a much more favorable position relative to Plaintiffs and all other electric customers in Naperville, Illinois. But the plaintiff in *Friedman* seeks further relief and makes

a convincing argument that electric customers should not be penalized to any degree for attempting to protect their safety, security, privacy, and property.

Defendant also inexplicably ignores all of the other states where electric customers, either through legislation or administrative agency action, have already been afforded a meaningful "opt-out" alternative. In other words, a customer is allowed to keep his or her current mechanical meter in numerous other jurisdictions where consumers have stood up for their rights. Am. Compl. ¶¶ 98 – 114.

Plaintiffs also note that lawyers from the law firm of Nixon Peabody LLP published a respectful serious analysis of the subject case dated March 22, 2012 entitled *"The Smart Grid: Privacy costs of the information jackpot."* The Nixon Peabody publication (which pre-dates Plaintiffs' filing of its First Amended Complaint for Injunctive Relief) is attached hereto as Exhibit A.

This is not the first time Defendant has exaggerated or conducted itself unprofessionally during this litigation. Immediately after the prior motion hearing in this case of April 19, 2012, where the Honorable Judge Chang set a briefing schedule with respect to Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion to Dismiss, Defendant issued a press release with the following incredibly misleading and inaccurate headline, *"Federal Judge Rejects Attempt to Halt Smart Meter Installation. Judge Denies Injunction to Allow Residents to Retain Analog Electric Meters."* (Copy attached hereto as Exhibit B.) The willfully misleading release was posted on the City of Naperville's official government website and apparently emailed by Defendant far and wide. Plaintiffs' counsel received multiple phone calls on April 19, 2012, from reporters representing area newspapers seeking

comment. All had the false, but understandable impression given the press release's headline that the subject lawsuit had been thrown out of court.[1]

### A. Defendant inexplicably claims that "the status quo" is the forced installation, without exception, of an unwanted and unnecessary device.

Defendant makes the startling claim that forced installation of a new and unproven device as part of an expensive city-wide program which is far from complete, somehow represents the "status quo" condition. Defendant provides no evidence or case law in support of its remarkable assertion. Defendant throws in three case citations, but in fact all three cases support Plaintiffs' position.

The legal definition of status quo ante has a clear meaning and supports only one conclusion in this case. *Black's Law Dictionary* defines "status quo" to mean "the existing state of things at any given date" and offers the example "status quo ante bellum" to mean "the state of things before the war." *Black's Law Dictionary* 1264 (5th ed. 1979). Judicial precedent confirms that "the status quo" is the last uncontested status which preceded the pending controversy. See *Litton Systems, Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed.Cir.1984). "[T]he courts define 'status quo' as the last peaceable, uncontested status of the parties which preceded the actions giving rise to the issue in controversy." *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 123 F. Supp. 2d 470, 473 (E.D. Wis. 2000) (citing *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir.1958)), *rev'd on other grounds*, 255 F.3d 460 (7th Cir. 2001). "This standard allows the court to restore the status quo ante when the continuation of the changed situation would

---

[1] "We can think of no better example of a pleading not well grounded in fact or law than a brief that falsely imputes a particular position to this court." *Mays v. Chicago Sun-Times*, 865 F.2d 134, 140 (7th Cir. 1989).

inflict irreparable harm on plaintiff." *Kimbley v. Lawrence Cty. Ind.*, 119 F. Supp. 2d 856, 874 (S.D. Ind. 2000) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil* 2d § 2948). Here, the action giving rise to the issue in controversy is the forced installation of smart meters without meaningful customer consent or notice.

Defendant is awkwardly attempting to turn the logical and truthful analysis of "status quo" on its head. Defendant's newly created definition of "status quo" is absurd for two reasons. First, the analog meters customers currently have perform the required task of measuring electricity consumption perfectly well, and Defendant has not even attempted to claim otherwise. Second, Defendant has apparently decided it can change the definition of "status quo" on its own whenever it believes it is advantageous to itself to do so.

Defendant disingenuously and inaccurately says Plaintiffs "delayed" this action. As previously discussed, Plaintiffs never wanted to litigate this matter at all. Plaintiffs come to this Court because they have no alternative. The vast majority of electric customers in America, including in Illinois, have a state regulatory agency looking out for them. In Illinois that agency is of course the Illinois Commerce Commission. However because Plaintiffs are customers of a city-owned utility which is completely outside the jurisdiction of a state regulator, Plaintiffs have nowhere else to go besides this Honorable Court. Plaintiffs made every good faith effort to work with the closest thing to a regulatory body which existed in this case - the City of Naperville City Council which is Defendant's governing board and oversees Defendant's electric utility including the installation of smart meters. Various Plaintiffs and other Naperville residents attended nearly every City Council meeting for over a year to voice their concerns about smart meters. For the most part those residents were

9

disrespected and sometimes even mocked. See e.g., Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, p. 11.

Defendant's latest filing also ignores that Plaintiffs' Motion for Preliminary Injunction simply asks for what Defendant itself considered the "status quo" as recently as March 21, 2012. Prior to that date Defendant's smart meter installers were respecting "do no install" signs posted by residents. Installers would see such a sign and move on to another residence. However Defendant informally changed this policy without notice on or about March 21, 2012. Plaintiffs' Motion for Preliminary Injunction seeks the restoration of what was essentially Defendant's own policy until approximately three months ago, until such time as the issues in this case as originally set forth in Plaintiff's First Amended Complaint for Injunctive Relief are fully litigated. See Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss and Reply in Support of Plaintiffs' Motion for Preliminary Injunction at pp. 22 and 23.

In any event, the Court should reject Defendant's Motion as Plaintiffs have satisfied their burden and demonstrated that injunctive relief is warranted and justified. As detailed in their Motion for Preliminary Injunction and supporting Memorandum, Plaintiffs have satisfied all necessary prongs for issuance of a preliminary injunction including a showing of Plaintiffs' likelihood of success on the merits. See *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 464 (7th Cir. 2001) ("preliminary injunctions are often issued to enjoin the enforcement of a statute or contract and thus interfere with existing practices"); *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009) (preliminary injunction altering status quo or mandatory in nature may be entered upon heightened showing of likelihood of success).

### B. Defendant's assertion that "Plaintiffs cannot succeed upon the merits" is frivolous, unsupported, self-serving, and must be rejected on its face.

Defendant's entire Motion contains only four "arguments," the second of which is captioned "Sanctions must be granted since the Plaintiffs cannot succeed upon the merits of theur [sic] action" in Defendant's Memorandum of Law in Support of Defendant's Motion. Defendant's "support" for this declaration is contained in exactly one paragraph consisting of 114 words.

It does not appear to have dawned on Defendant that it is now in a U.S. District Court and no longer in a city council chamber of a home rule unit of government where Defendant has been accustomed to making its own rules, largely in a vacuum. Plaintiffs respectfully request that this Court be the one to decide whether Plaintiffs can succeed on the merits, particularly since the discovery phase of this litigation has not even yet commenced. Plaintiffs would also respectfully direct this Court once again to the other actions around the country where plaintiffs have won meaningful relief – either in court or administratively - based on legal theories and complaints substantially similar to the counts brought forth by Plaintiffs. Defendant's continued silence on these similar cases from other jurisdictions is deafening, if not evidence of Defendant's bad faith. Defendant's arbitrary and self-serving declaration to the effect that "Plaintiffs can't win because we say so" is insulting to all the parties involved, particularly to this Court, and should be accorded no weight.

### C. Defendant fails to explain how Plaintiffs have an adequate remedy at law and further fail to support how the equities tip in Defendant's favor.

Plaintiffs explained how there is no adequate remedy at law in their Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction at p. 11. Defendant does not even

begin to rebut Plaintiffs' analysis or attempt to explain how monetary damages could compensate for credible health hazards attributable to smart meters.

Further, while Defendant makes claims of "operational efficiencies and cost savings to consumers inherent in installation of the Smart Meters . . ." there is no such evidence in the record. In fact in response to a recent Freedom of Information Act request seeking evidence of cost and energy savings attributable to smart meters, Defendant responded, "Please be advised that we do not have records that are responsive to your request. Meter deployment is still in progress." Plaintiffs' Motion to Supplement the Record of Plaintiffs' Motion for Preliminary Injunction, Ex. N.

Not only has Defendant failed to provide documentary evidence supporting claims of cost-savings associated with smart meters, Defendant's own projections have shown consumer rates rising in future years. While the reason(s) for such increases are unclear, at a minimum it is correct to say that smart meters are unproven as both a cost and energy saving vehicle. In fact as noted in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, Ex. H, Illinois Attorney General Lisa Madigan has publicly expressed skepticism about "smart grid" technology and any promises of cost savings.

Defendant's claims of financial harm also ring hollow given the two largest investor owned utilities in Illinois had to seek specific legislative approval last year from state lawmakers in Springfield in order to raise consumer rates specifically for the purpose of funding the added costs of "smart grid" related installations. Now the Illinois Commerce Commission is expressing more concerns and both Ameren and ComEd have recently announced they are looking at delays in smart meter installations. (See Exhibit C.)

Plaintiffs are puzzled by Defendant's baseless accusation that Plaintiffs' "true goal" is "to overstep the democratic process and seek judicial intervention in a public policy matter that implicates no legal rights." The assertion is as wrong as it is nonsensical. This matter clearly implicates legal rights, some of the most vital in fact including health, safety, privacy and security. Defendant appears offended or at least surprised by the idea that a legislative body's action would be challenged judicially on constitutional grounds. Obviously this happens all the time and such judicial review is just one of the vital functions our Courts perform. The recent U.S. Supreme Court challenge to the federal legislation often informally refereed to as "Obamacare" is just one highly publicized example. *Department of Health and Human Services v. Florida*, Docket No., 11-398. And this Court recently granted a permanent injunction barring enforcement on constitution grounds of portions of Illinois' campaign finance law in *Personal PAC v. McGuffage*, No. 12-CV-1043, 2012 WL 850744, at *4 (N.D. Ill. Mar. 13, 2012).

### D. Defendant relies upon inapplicable authorities to support its request for sanctions.

In its Motion for Sanctions, Defendant cites only four cases having anything to do with sanctions. But none of them are applicable to the instant case and Defendant utterly fails to explain their applicability. *U.S. Bank National Association, N.D. v. Sullivan-Moore*, 406 F.3d 465 (7th Cir. 2005) centered on a law firm which never provided notice to a 69-year old homeowner the firm was involved in evicting. *Malec Holdings II Ltd. v. English*, 217 Fed.Appx. 527 (7th Cir. 2007) which involved a plaintiff commencing a frivolous federal action in an attempt to remedy a state court default judgment is equally unhelpful. Similarly, Defendant cites *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union*

13

*(Independent) Health & Welfare Fund*, 25 F.3d 509 (7th Cir. 1994) and *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282 (N.D.Ill. 1988) but fails to provide a scintilla of explanation as to how those cases relate to the well researched and strongly supported claims at the heart of Plaintiffs' suit in the instant case.

### E. Plaintiffs' Motion for Preliminary Injunction in no respect warrants Rule 11 sanctions and Defendant has wholly failed to rebut Plaintiffs' position.

As the Seventh Circuit previously reasoned, "While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution. Even where, as here, the monetary penalty is low, a Rule 11 violation carries intangible costs for the punished lawyer or firm. A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter. We may not impugn the reputation without carefully analyzing the legal and factual sufficiency of the arguments." *FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988).

The Seventh Circuit also explained, "[S]anctions do not inevitably flow from being wrong on the law. Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed, thereby transforming it into a fee shifting statute under which the loser pays. This circuit has made it clear the Rule may not be so interpreted." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*, 9 F.3d 1263, 1270 (7th Cir. 1993) (citing *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)).

### CONCLUSION

It is hard to resist the urge to engage in tit-for-tat litigation and seek sanctions for the meritless sanctions motion filed by Defendant. But resist we will – out of respect for the seriousness of this case and others on the Court's docket. Plaintiffs have no interest in

playing litigation games. As previously stated, Plaintiffs are here for the sole reason that they have legitimate fears regarding smart meters and they simply seek the same kind of reasonable and meaningful "opt-out" relief that other concerned electric customers are being afforded all across the country.

For all the reasons set forth herein, Defendant's Motion for Sanctions should be denied.


Dated this 18th day of June, 2012.

                              Respectfully submitted,


                        By:  s/ Doug E. Ibendahl
                              Doug E. Ibendahl, ARDC No.: 6229474
                              165 N. Canal Street, Suite 1215
                              Chicago, Illinois 60606-1404
                              Tel: 312-648-0061
                              Email: dibendahl@mail.com
                              ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2012, I caused to be electronically filed a true and correct copy of Plaintiffs' Response in Opposition to Defendant's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 Regarding Plaintiffs' Motion for Preliminary Injunction with the Clerk of the U.S. District Court of the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, using CM/ECF, which will send electronic notification of such filing to the following:

Margo Ely
City of Naperville
400 S. Eagle Street
Naperville, Illinois 60540
ElyM@naperville.il.us

Kristen June Foley
City of Naperville
400 S. Eagle Street
Naperville, Illinois 60540
FoleyK@naperville.il.us

By:   s/Doug E. Ibendahl
     Doug E. Ibendahl, ARDC No.: 6229474
     165 N. Canal Street, Suite 1215
     Chicago, Illinois 60606-1404
     Tel: 312-648-0061
     Email: dibendahl@mail.com
     ATTORNEY FOR PLAINTIFFS