# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NAPERVILLE SMART METER AWARENESS, An Illinois not-for-profit corporation, MARGARET MARY WOOD, SCOTT J. DERENGOWSKI, KIMBERLEY WELLS HAMILTON, JO MALIK, JENNIFER STAHL, TOM GLASS, KIM BENDIS, GLENN A. MENDOZA, and AMANDA RYKOV, Plaintiffs, v. CITY OF NAPERVILLE, Defendant. | Case No. 11-CV-9299 Honorable John Z. Lee |

## DEFENDANT CITY OF NAPERVILLE'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND PURSUANT TO SEPTEMBER 21, 2012 ORDER

**NOW COMES** the Defendant City of Naperville, by and through its attorneys Margo Ely and Kristen Foley, and hereby asks this Honorable Court to grant its Motion to Dismiss, Deny Plaintiffs' Motion for Preliminary Injunction and grant Defendant's Motion for Sanctions. In support thereof, Defendant states as follows:

## INTRODUCTION

This lawsuit is not a class action case challenging the smart meter technology that is sweeping the nation; it is a challenge filed by nine (9) individual plaintiffs to Naperville smart meters as part of the Naperville Smart Grid Initiative. Plaintiffs have chosen to not pursue a class. Their request for injunctive relief, however, goes far beyond their individual standing and asks that this Court halt the project, allow any Naperville customer to retain their current meters and refuse a smart meter and delay the project until Plaintiffs can collect signatures to place an advisory referendum on the ballot. Plaintiffs failed to specifically seek injunctive relief until

50% of the City's smart meters were already installed. Further, Plaintiffs have never requested a Temporary Restraining Order and have never asked that this case be expedited. In accordance with the longstanding plan for implementation of the project, the City's installation is currently 99% complete. Plaintiffs' Complaint for Injunctive Relief, which requests solely injunctive relief and nothing more, should be dismissed as moot.

The Plaintiffs have been provided multiple opportunities to support the legal basis of this case with citations to precedent and evidence. They have failed to do so, because this is simply not a constitutional case. This case is an inappropriate use of judicial resources to reverse a lawful legislative decision by a local government of elected officials. Plaintiffs have admitted that their political efforts to persuade their elected officials have failed and their frustration is apparent.

With this last opportunity to avoid dismissal and sanctions, Plaintiffs claim smart meters violate their bodily integrity, relying on cases involving forced sterilization, abortion and government forced radiation exposure on terminally ill, indigent cancer patients. Plaintiffs legal arguments lack not only merit, but also lack any semblance of good faith. The cases have no rational relationship to the present case and some of the cases cited by Plaintiffs actually held contrary to Plaintiffs' representations. *See*, *e.g*., Hurtado v. California, 110 U.S. 51 (1884) (finding the 14th amendment does not require states to provide grand juries required by the 5th amendment); Prince v. Massachusetts, 321 U.S. 158 (1944) (upholding a child labor law that prohibited parents from allowing their children to sell religious literature and stating, "The family itself is not beyond regulation in the public interest.").

Similar to the lack of legal support, Plaintiffs' conclusory and specious factual statements claiming the City's smart meters will "harvest" private information such as travel plans, sleeping

habits and their presence in their homes, are insufficient to dispute the City's evidence in the record. For all of these reasons, Defendant respectfully requests this Honorable Court dismiss this case, deny the Motion for Preliminary Injunction and grant the City's Motion for Sanctions.

## **EVIDENTIARY RECORD**

The Plaintiffs have failed to produce any relevant evidence to support their claims that the City's smart meters will harvest private information. The Plaintiffs' hearsay newspaper articles, editorials, political statements and affidavits from persons with no knowledge of the City's smart meters should be disregarded by this Court. On the other hand, the City's evidence, which includes testimony from experts with relevant knowledge of the City's smart meters, requires dismissal of this case and denial of the Motion for Preliminary Injunction. Likewise, Plaintiffs' baseless statements, including that the City's smart meters will provide information as to their travel plans, presence at home or sleeping habits, should be disregarded. Plaintiffs' contention, with no evidentiary support, that energy consumption will inform the City of private activity is simply untrue. Some people sleep with lights, TV, radio, refrigerator and computer on. Some people are awake with no use of lights, TV or radio. Similarly, many residents have timers on lights so that their house appears to be occupied when it is not. Energy consumption levels are not reliable indicia of activity and certainly implicate no constitutional rights. Plaintiffs' simplistic and overly broad arguments reveal the frivolous nature of this case.

Plaintiffs asserted to this Court that the City will be able to tell "how many people are in the house." Transcript at 41. Plaintiffs have produced no evidence to support this claim. Plaintiffs refer to smart meters as "radio transmitters," "communication devices" and even compare them to webcams. (*See* transcript at 25, 26, 29). However, even after an additional

opportunity to support the baseless contentions, Plaintiffs have produced no evidence to support their outlandish statements.

Indeed, Plaintiffs admitted during the oral arguments that the City is privy to accurate information and the Plaintiffs are not. (*See* Transcript at 5). Plaintiffs failed to produce any evidence to dispute the expert testimony of Cyrus Ashrafi and Olga Geynisman, electrical engineers with expert knowledge of the City's smart meters. Mr. Ashrafi and Ms. Geynisman have provided testimony, based on their expert knowledge, that the City's smart meters will obtain aggregate energy usage information and nothing more. Their testimony is very plain and direct. *See*, transcript at 16 ("the meters don't have the resolution to determine what appliance is being used," Cyrus Ashrafi); Exhibit A, Affidavit of Olga Geynisman, P.E. at para 27 ("There is no way to determine, based on the information collected and the technology used to collect the information, which appliance are being used or other intimate details going on inside a customer's home, such as medical conditions or sexual activities, or activities of occupants occurring within the home.").

In addition to expert testimony, the City has provided an actual meter reading, which Plaintiffs fail to refute, that demonstrates that the Naperville smart meters only collect aggregate energy consumption data and not any of the information Plaintiffs continue to claim. (Attachment C to Affidavit of Olga Geynisman, Smart meter report of City Manager Douglas Krieger's residence reflecting energy consumption in 15 minute intervals).

The City has also cited provisions of the Naperville Municipal Code, which explicitly provide that the City Department of Public Utilities owns all the utility equipment, is legally entitled to select the equipment and has free access to customer premises to maintain, repair or replace its equipment. *See*, Section 8-1A-4 (DPU-E shall furnish, own and maintain all metering

4

equipment or other equivalent control means through which electric service is supplied.); Section 8-1B-1-3.1 (Any properly authorized agent of the City of Naperville shall have free access to the customer's premises at all reasonable hours for the purpose of reading, examining, inspecting, repairing, replacing or removing DPU-E meters or other equipment or property.); 8-1B-1-2.1 (All electric customers agree to conform to and abide by the City's ordinances, rules and regulations for the operation of the electrical distribution system, including the provision that all meters are selected, owned and maintained by the City.)  The City has a legitimate and reasonable interest in operating the electric utility and its rules are rationally related to its interest.  Plaintiffs have failed to provide any credible evidence to dispute the City's evidence, testimony and documents.

## ARGUMENT

With this last opportunity to articulate an actionable constitutional claim, Plaintiffs fail to articulate a constitutionally protected interest, fail to challenge the City's reasonable and legitimate public interest and government authority to select its utility equipment and even fail to identify an appropriate standard for determining their claims.  Plaintiffs failures not only support dismissal of this case, but reveal that the case is entirely frivolous and require sanctions be imposed for the abuse of judicial process.

It is well established that federal courts conduct a careful analysis to determine federal jurisdiction and constitutional implications.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 US 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).  Plaintiffs

fail to identify a specific constitutional right that is implicated by the installation of smart utility meters on the outside of homes. Such action simply has no constitutional ramifications.

### PLAINTIFFS HAVE NO CONSTITUTIONAL RIGHT TO SELECT UTILITY EQUIPMENT AND THE NAPERVILLE SMART GRID INITIATIVE DOES NOT IMPLICATE ANY RIGHTS PROTECTED BY THE FOURTEENTH AMENDMENT

With respect to the Fourteenth Amendment, the Courts are reluctant to expand its protections. As the Court has stated, "the garden-variety public officer defamation case that does not result in exclusion from an occupation, state tort remedies should be adequate and the heavy weaponry of constitutional litigation can be left at rest." Albright v. Oliver, 510 US 266, 270, 114 S.Ct. 807, 812 (1994); *See also*, Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 409 (1st Cir. 1990) (the challenged conduct must be "so egregious that it violated substantive or procedural due process rights under the Fourteenth Amendment"). The Court has further explained, "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Albright, 510 U.S. at 812, 272.

The law is well established that the Fourteenth Amendment protections are limited to matters relating to marriage, family, procreation and the right to bodily integrity. Id. *citing* Planned Parenthood of Southeastern Pa v. Casey, 505 U.S. 833, 847-849, 112 S.Ct. 2791, 2804-2806, 120 L.Ed.2d 674 (1992) (describing cases in which substantive due process rights have been recognized.) Plaintiffs' case is markedly different from those cases in which 14th amendment rights have been recognized by the Court. Indeed, Plaintiff's approach "would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under section 1983. Presumably, under this rationale, any party who is involved in nothing more

6

than an automobile accident with a state official could allege a constitutional violation under Section 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." Parratt v. Taylor, 451 U.S. at 544, 101 S.Ct. at 1917 (*quoting,* Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

Plaintiffs claim their right to bodily integrity is violated by Naperville's replacement of their current electric meters with smart meters. Plaintiffs' argument lacks logic and should be dismissed by this Court. Similarly, Plaintiffs complaints that the City Council has not afforded constitutional due process by failing to conduct a hearing purportedly required by Public Utilities Regulatory Policies Act [PURPA], likewise lacks merit. PURPA has never been held to confer constitutional rights. Likewise, Plaintiffs reference to the referendum proceedings, conducted in accordance with state law and appealed to two judicial review levels, reveals either a disregard for applicable constitutional analysis or ignorance. For all these reasons, Defendant's Motion to Dismiss should be granted.

### THERE IS NO FOURTH AMENDMENT VIOLATION IN THE COLLECTION OF ELECTRIC USAGE DATA FROM CUSTOMERS IN 15 MINUTE INTERVALS

In their final opportunity to persuade this Court that the collection of electric usage data every fifteen minutes violates the U.S. Constitution, Plaintiffs fail to cite any facts or case law to support an expectation of privacy in electric usage information and that Defendant violates that privacy interest when collecting the information for billing purposes. Plaintiffs' reliance upon cases involving surreptitious, warrantless activities of federal agents seeking information to be used in a criminal proceeding, such as United States v. Jones and Kyllo v. United States, is inapplicable to the collection of voluntary customer information by a utility provider. The Fourth Amendment does not provide a constitutional right to privacy in all situations and places.

Katz v. United States, 389 U.S.347, 88 S.Ct. 507, (1967). In the current matter, the City's recording of electric usage data, the amount of electricity as captured by electric meter every 15 minutes, does not implicate the Fourth Amendment because there is no subjective expectation of privacy that society is willing to recognize as reasonable, under *Katz v. United States*, 389 U.S.347, 88 S.Ct. 507, (1967), in electric usage data provided by the customer to the utility. Additionally, Plaintiffs reliance on United States v. Jones, 132 S.Ct. 945, (2012) and Kyllo v. United States, 533 U.S. 27 (2001) to support a Fourth Amendment violation is incorrect as the Plaintiffs have consented to the measuring of electric usage in their homes.

    **A.    No Subjective Expectation of Privacy that Society is Willing to Recognize as Reasonable in Electric Usage Data Provided by the Customer to the Utility**

Plaintiffs erroneously argue that the cases cited by Defendant demonstrating wide spread belief across the country that customer utility records have no privacy ramifications are inapplicable because the prior cases involve analog meters and not smart meters. *See* United States v. McIntyre, 646 F.3d 1107 (8th Cir 2011); United States v. Hamilton, 434 F.Supp.2d 974 (D.Or., 2006) A simple analysis of Smith v. Maryland, 442 U.S. 735, 99 S. Ct. 2577 (1979), the seminal case involving utility providers and customer information, shows the fallacy of Plaintiffs argument. The Smith case, involving a phone company, was the first case to hold a utility customer had no legitimate expectation of privacy in information conveyed to a utility provider. The logic of the Supreme Court, at the time analyzing 1970s technology is still applicable today, even though current phone systems are far superior and land based telephone lines are almost extinct. In holding no expectation of privacy in dialed phone numbers, the Court stated "telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording the information; and that the phone company does in fact record the information for a variety of legitimate business purposes.

8

Although subject expectations cannot be scientifically gauges, it is too much to believe that telephone subscribers, under these circumstances harbor any general expectation that the numbers they dial will remain secret." Smith at 743. Plaintiffs fail to recognize the information being collected – actual energy usage, is the same, regardless of the technology doing the collecting. Plaintiffs can't and don't dispute that they are aware that they must hook up through a meter to receive electricity and that the meter provides information as to how much electricity is used.

Plaintiffs have not disputed that both federal and state courts in Wyoming, California, Nebraska, Alaska, Idaho, Oregon, Colorado and Virginia have all found no reasonable expectation of privacy in electric consumption records. *See,* United States v. Porco, 842 F.Supp. 1393 (D.Wyo.,1994); People v. Stanley, 72 Cal.App.4th 1547, 86 Cal.Rptr.2d 89, (1999); United States v. McIntyre, 646 F.3d 1107, (2011); Samson v. State, 919 P.2d 171 (1996); State v. Kluss, 125 Idaho 14, 867 P.2d 247 (1993); United States v. Hamilton, 434 F.Supp.2d 974 (D.Or.,2006); People v. Dunkin, 888 P.2d 305 (1994); Booker v. Dominion Virginia Power, 2010 WL 1848474 (E.D.Va, 2010). As a matter of law, Plaintiff's claim that there is any privacy interest in electricity consumption information should be rejected because the law is clear that electric usage information is not the type of privacy interest that society has deemed needing protection under the Fourth Amendment.

    **B) Plaintiffs Reliance on United States v. Jones and Kyllo v. United States to Support a Fourth Amendment Violation is Incorrect Because Plaintiffs Have Consented to the Measuring of Electric Usage in their Homes.**

Plaintiffs claim they are entitled to refuse smart meters. Plaintiffs have no constitutional right to choose their utility meters. Likewise, they simply have no legal right whatsoever to interfere with the City's installation of meters at their homes. Indeed, all the Plaintiffs have

consented to receiving electric service by the City. There are four methods in which the City's utility customers consent to the City's utility service and its rules and regulations. First, many customers, including at least half of the Plaintiffs have executed a utility contract with the City consenting to the City's ordinances and rules and regulations when they first obtained utility service. *See*, Exhibit B, Plaintiff Kim Bendis' signature indicating her agreement to comply with all applicable rules and regulations of the City's electric utility. Second, the Naperville Municipal Code is explicit in this regard. Sections 8-1A-2 and 8-1B-1:2.1 explicitly provide that all customers consent to the utility's rules and regulations, including its ownership of the meters and right to replace such meters. Exhibit C, Sections 8-1A-2 and 8-1B-1 of the Naperville Municipal Code. Finally, thousands of properties located in the City have utility easements recorded thereon, which expressly allow entry on the property for utility purposes.

As Plaintiffs have consented to electric service, consented to the City's use of equipment for that service and consented to agents of the City on their property to read meters, an argument that the City needs a warrant to collect electric usage data every fifteen minutes is quite misplaced. Indeed, the Plaintiffs have failed to cite one case from any jurisdiction to support their contention. The current matter is opposite of both Jones and Kyllo, where the government obtained information for a criminal proceeding in a manner not authorized by the defendant or a search warrant. In *Jones*, federal agents physically placed a GPS device on Defendant's car after the warrant authorizing such action expired and obtained information as to Jones' travels. United States v. Jones, 132 S.Ct. 945, (2012). In Kyllo, a federal agent used an advanced technology thermal imager to obtain thermal images of inside a home. Kyllo v. United States, 533 U.S. 27 (2001). In both cases, a Fourth Amendment violation occurred, although the rationale to justify the violations differed in each case. The Jones court focused on the actual

physical trespass to the car and the subsequent recording of information and not the Katz reasonable expectation of privacy test. The Kyllo court applied the Katz reasonable expectation of privacy test and found a violation occurred when information regarding the interior of the home was obtained without a warrant or consent, but by means of highly advanced thermal imaging.

In the instant matter, Plaintiffs have all consented to having an electric meter on their home, consented to receiving electricity from the City and consented having their electric usage data recorded. The City's actions in recording electric usage do not go unnoticed. Plaintiffs are keenly reminded of the City's electrical presence on their home every month when they receive a bill from the City for their electric usage. The City is not trespassing on Plaintiff's property or recording information without their express consent. As Plaintiffs consent to the recording of electric usage data, no Fourth Amendment violation will occur.

**PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND THEIR FIFTH AMENDMENT CLAIM MUST BE DISMISSED**

The law is clear that, in order to state a claim for a Fifth Amendment taking of property, Plaintiffs must exhaust their administrative remedies. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 297, n. 40, 101 S.Ct 2352, n. 40, 69 L.Ed.2d 1(1981). Illinois provides adequate procedures for seeking just compensation for an unlawful government taking, including an inverse condemnation action, an action for damages or even a mandamus action. *See*, International College of Surgeons v. City of Chicago, 153 F.3d 356, 367 (7th Cir. 1998) (Illinois Constitution is generally thought to provide greater protection than the United States Constitution). Even assuming the installation of utility meters could constitute a

taking of property, Plaintiffs admit they have not exhausted any administrative remedies. For these reasons, the Plaintiffs' Fifth Amendment claim should be dismissed.

### PLAINTIFFS HAVE FAILED TO PRODUCE ANY EVIDENCE TO SUPPORT THEIR BASELESS BELIEFS ABOUT SMART METER CAPACITY TO COLLECT INFORMATION

The Court has asked the City to address the legality of collecting information so detailed and technical that the City could determine the specific usage of each electrified object in a home and whether that would constitute a Fourth Amendment violation. The Plaintiff has produced no evidence that this is occurring, or that it is even possible. The City has produced testimony and documents that the City's smart meters will not collect private information and will only collect aggregate power consumption data. Plaintiffs' failure to produce evidence to support their claims is fatal to their case. For these reasons, Defendant's Motion to Dismiss should be granted.

**WHEREFORE**, Defendant the City of Naperville respectfully requests that this Honorable Court grant its Motion to Dismiss, Deny Plaintiffs' Motion for Preliminary Injunction and grant Defendant's Motion for Sanctions.

Respectfully submitted,

**CITY OF NAPERVILLE**

/s/ Margo Ely
Margo Ely

Margo Ely, City Attorney
Kristen Foley, Senior Assistant City Attorney
The City of Naperville
400 South Eagle Street
Naperville, Illinois 60540
Phone: (630) 420-4170