IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAPERVILLE SMART METER AWARENESS, an Illinois not-for-profit corporation, | )<br>)<br>) |
| Plaintiff, | ) 11 C 9299 |
| v. | ) Judge John Z. Lee |
| CITY OF NAPERVILLE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Naperville Smart Meter Awareness ("NSMA"), an Illinois not-for-profit corporation, has sued the City of Naperville ("the City") pursuant to 42 U.S.C. § 1983, alleging violations of its members' rights to due process and liberty in bodily integrity and self-determination under the Fourteenth Amendment (Count I), freedom from unreasonable search under the Fourth Amendment (Count II), and equal protection of the laws under the Fourteenth Amendment (Count III). NSMA also alleges discrimination on the basis of disability in violation of Titles II and III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count IV). The City has moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). The City has also moved for sanctions pursuant to Rule 11(c)(2). For the reasons set forth herein, the Court grants in part and denies in part the City's motion to dismiss. The Court also denies the City's motion for sanctions.

# Factual Background[1]

In Naperville, Illinois, all residential electrical utility services are provided by the Department of Public Utilities-Electric, a company owned and operated by the local city government. 2d Am. Compl. ¶ 16. In 2012, the Naperville Department of Public Utilities-Electric began replacing its customers' analog electricity meters with smart meters as part of a local program called the Naperville Smart Grid Initiative. *Id.* ¶¶ 25, 73. The Naperville Smart Grid Initiative is funded in part by the U.S. Department of Energy, which received $4.5 billion of federal tax dollars under the American Recovery and Reinvestment Act of 2009 for the purpose of modernizing the nation's electrical power grid. *Id.* ¶ 25. The objectives of the Naperville Smart Grid Initiative include increasing energy efficiency, reducing emissions, and lowering electricity consumption costs. *Id.* Ex. A, Attach. E, Statement of Project Objectives.

Like analog meters, smart meters measure customers' total residential electricity usage for monthly billing purposes. *Id.* ¶ 35. Unlike analog meters, however, smart meters are equipped with wireless radio transmitters that, when activated, send usage data via radio-frequency waves to nearby neighborhood "network access points," which then relay usage data to Naperville's Department of Public Utilities-Electric. *Id.* ¶¶ 41–42. The functionality of smart meters thus obviates the need for the City to send in-person meter readers to residents' homes. *See id.* Another difference is that, while analog meters are capable of measuring only total accumulated electricity consumption, smart meters measure aggregate electricity usage much more frequently, in intervals of fifteen minutes. *Id.* ¶¶ 33, 35.

---

[1] The following facts are taken from NSMA's Second Amended Complaint and the exhibits attached thereto, which the Court may consider as part of the pleadings without converting this motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 10(c); *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). The Court must accept these facts as true when reviewing the City's motion to dismiss and draw all possible inferences in NSMA's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

As an alternative to having new smart meters installed in their homes, Naperville residents may opt to have their old analog meters replaced with "non-wireless meters." *Id.* ¶ 177. These "non-wireless meter alternatives" are essentially smart meters with their radio transmitters deactivated so that they emit no radio-frequency waves and must be read manually by a meter reader each month. *See id.* ¶¶ 179–80. Residents who choose the non-wireless meter alternative must pay a one-time installation fee of $68.35, plus an additional monthly fee of $24.75. *Id.* ¶ 181.

NSMA is an Illinois not-for-profit corporation whose stated mission is to "educate, engage and empower families, friends and neighbors to advocate for a fiscally responsible and safe utility meter solution in Naperville, Illinois." *Id.* ¶ 8. NSMA alleges that the radio-frequency waves that smart meters emit present health risks to Naperville residents. In support, it claims that radio-frequency waves have been "proven to cause headaches, ringing in the ears, anxiety, sleep disorders, depression, and other symptoms, particularly in individuals who suffer from electromagnetic sensitivity." *Id.* ¶ 99. Furthermore, because smart meters are capable of taking data measurements in frequent, discrete time increments, NSMA alleges that they present privacy risks that analog meters do not. Specifically, NSMA claims that a home's smart-meter data history is capable of revealing "intimate details about residents' personal lives and living habits" and that "[a]n inspector of this detailed history can determine at what time residents are home, and . . . could even make reasonable assumptions regarding particular appliances and lighting presently in use." *Id.* ¶¶ 38, 235.

NSMA now brings a number of constitutional and federal claims in connection with its various objections to the implementation of the Naperville Smart Grid Initiative. First, NSMA claims that the City has deprived its members of their right to bodily integrity and self-

determination under the Fourteenth Amendment by installing unsafe smart meters without first giving residents an opportunity to oppose the Naperville Smart Grid Initiative at a public hearing or through the referendum process. *Id.* ¶¶ 217–20. NSMA also alleges that the City's collection of detailed smart-meter data constitutes an unreasonable search of information under the Fourth Amendment. *Id.* ¶ 229. Next, NSMA alleges that the City has violated its members' right to equal protection, both by charging fees for the non-wireless meter alternative as well as by denying requests by NSMA members to retain analog meters for medical reasons while granting similar requests made by non-members. *Id.* ¶¶ 240–42. Finally, NSMA claims that imposing fees on residents who opt for the non-wireless meter alternative discriminates against certain disabled residents who are especially threatened by health risks related to smart meters. *Id.* ¶¶ 251–54. NSMA seeks an injunction ordering the City to make analog meters and non-wireless meters available at no additional cost upon customer request. *Id.*, Prayer for Relief ¶ 2.

Earlier in this litigation, the Court granted the City's motion to dismiss NSMA's First Amended Complaint with leave to amend some of the counts therein. NSMA has since filed a Second Amended Complaint. The City now moves to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## Discussion

### I. Subject Matter Jurisdiction

As a preliminary matter, the City moves to dismiss NSMA's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In particular, the City asserts that NSMA lacks standing to bring its claims and that this case is moot. The Court will address these two arguments in turn, taking as true all facts alleged in the Second Amended Complaint and drawing

4

all reasonable inferences in NSMA's favor. *See Miller v. F.D.I.C.*, 738 F.3d 836, 840 (7th Cir. 2013); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

A. **NSMA Has Associational Standing**

The City first argues that NSMA lacks standing to bring this case. Although the City already raised, and the Court analyzed, this issue in the City's first motion to dismiss, the City has emphasized slightly different arguments in its second motion to dismiss, and so the Court will address the issue of standing—and the question of subject matter jurisdiction—anew. *Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1525 (7th Cir. 1990).

The doctrine of standing stems from Article III of the United States Constitution, which limits the scope of judicial authority to the adjudication of actual cases and controversies. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To establish standing, an individual plaintiff must allege an injury in fact, a causal relationship between the injury and the defendant's acts, and redressability of the injury. *See Lac Du Flambeau*, 422 F.3d at 495 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Although the alleged injury must be "concrete and particularized," an injury that is merely threatened, rather than immediate, may suffice to establish standing. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977) (requiring "immediate or threatened injury as a result of the challenged action" to establish standing (quoting *Warth*, 422 U.S. at 511)); *Lac Du Flambeau*, 422 F.3d at 498 ("[T]he present impact of a future though uncertain harm may establish injury in fact for standing purposes.").

An association has standing to bring suit as a representative of its members, even absent an injury to the association itself, when: "(a) its members would otherwise have standing to sue

in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 342–43; *see Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1380 (7th Cir. 1987).

When reviewing a facial challenge to standing, "allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Under this standard, NSMA's allegations have satisfied the requirements for associational standing with regards to all four of its claims. First, NSMA has shown that its members would have standing to bring each claim in their own right because it alleges that its members face various redressable injuries, immediate or threatened, that result from the City's actions. Namely, NSMA claims that the City has violated its members rights to substantive due process by forcing them to either accept installation of allegedly harmful smart meters or pay "penalty fees," 2d Am. Compl ¶¶ 99, 177–82; that the City's collection of smart-meter data invades its members' privacy, *id.* ¶¶ 149–50, 229–31; that the City has violated its members' right to equal protection by imposing fees for installation of non-wireless meters and by treating members less favorably than non-members who have been allowed to retain analog meters for medical reasons, *id.* ¶¶ 125–26, 242; and that the City's smart-meter program discriminates against disabled NSMA members, *id.* ¶ 251. Second, the interests NSMA seeks to protect are relevant to its stated organizational mission to "educate, engage and empower families, friends and neighbors to advocate for a fiscally responsible and safe utility meter solution in Naperville, Illinois." *Id.* ¶ 8. The third requirement of associational standing is also satisfied because NSMA's claims and the injunctive relief it seeks do not require individual members of the association to participate in this lawsuit. *See Local 194, Retail, Wholesale &*

*Dep't Store Union v. Standard Brands, Inc.*, 540 F.2d 864, 865 (7th Cir. 1976) (finding the third requirement for associational standing satisfied with respect to the plaintiff's claims for injunctive and declaratory relief, on the grounds that such relief inherently does not require participation by individual members); *Nat. Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1069–70 (N.D. Ill. 1995) (finding the third requirement for associational standing satisfied when the plaintiff sought only injunctive relief, even when it might have been necessary for some association members to testify in the case).

For these reasons, the Court finds that NSMA has associational standing to bring all claims in this case. The Court thus denies the City's motion to dismiss for lack of standing.

### B.     NSMA's Claims Are Not Moot

Next, the City argues that this case should be dismissed as moot on the grounds that "NSMA has asked this Court to halt the [smart meter] project and order the City to allow residents to retain their analog meters," when the City has by now substantially completed the smart-meter installation process. Def.'s Mem. Supp. Mot. Dismiss 5.

A case becomes moot when the original dispute between the parties ceases to exist or when one of the parties ceases to have a personal interest in the outcome of the case. *See Banks v. National Collegiate Athletic Ass'n*, 977 F.2d 1081, 1085 (7th Cir. 1992) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). NSMA contends that the injuries caused by smart meters adversely affect its members on an ongoing basis. For this reason, NSMA seeks injunctive relief "requiring the City to uninstall, upon an electric customer's request, such requesting customer's smart meter and to replace said smart meter with an analog meter at no additional cost . . . and to make available to its electric customers with disabilities[ ]

an analog meter or NWMA at no additional cost." 2d Am. Compl. ¶¶ 227, 237, 247; *id.* Prayer for Relief ¶¶ 1-2.

Given this statement from NSMA's prayer for relief, it is clear that the City's mootness argument relies entirely on a mischaracterization of the remedy NSMA seeks: NSMA asks not for smart-meter installation to be enjoined, but for smart meters to be replaced with alternative types of meters upon Naperville residents' request. *See id.* Prayer for Relief. As such, given the alleged injuries underlying this case and the form of relief sought, the Court finds that the original dispute between the parties continues to exist. The Court therefore concludes that this case is not moot and denies the City's motion to dismiss pursuant to Rule 12(b)(1).

## II. Motion to Dismiss for Failure to State a Claim

The City also moves to dismiss NSMA's claims under Rule 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), NSMA's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. In reviewing the City's motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in NSMA's favor. *See Tamayo*, 526 F.3d at 1081.

### A. Due Process Claim

NSMA first claims that the City's installation of smart meters violates NSMA members' due process rights to bodily integrity and self-determination under the Fourteenth Amendment. More specifically, NSMA claims that the City did not provide Naperville residents with notice and an opportunity to be heard before installing smart meters in their homes, and that radio

frequency waves emitted by smart meters in the homes of its members and its members' neighbors pose health risks. 2d Am. Compl. ¶¶ 216–20.

The Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property without due process of law." U.S. Amend. XIV. But "there can be no claim of a denial of due process, either substantive or procedural, absent deprivation of either a liberty or a property right." *Eichman v. Ind. State Univ. Bd. of Trs.*, 597 F.2d 1104, 1109 (7th Cir. 1979). Furthermore, the right to "substantive due process is 'very limited,'" *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014) (quoting *Tun v. Whitticker*, 398 F.3d 899, 900 (7th Cir. 2005)), and the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 228 (1992) (internal citations omitted). Furthermore, to survive a motion to dismiss a claim for deprivation of substantive due process, a plaintiff must allege facts tending to suggest that the government's action was arbitrary. *See Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 3–4 (7th Cir. 1974).

NSMA's due process claim fails because its allegations do not identify an arbitrary deprivation of a recognized liberty or property interest. At most, even assuming as true that radio frequency waves emitted by smart meters are capable of causing harm, NSMA's allegations suggest only that the City negligently increased a risk of injury. Allegations of such risk exposure are insufficient to state a claim for deprivation of bodily integrity under the Fourteenth Amendment. *See Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453–54 (6th Cir. 2002) (public school employees' Fourteenth Amendment rights were not violated when school officials exposed employees to asbestos-contaminated materials under carpeting, because the officials had not "engaged in arbitrary conduct intentionally designed to punish the

[employees]"); *Hood v. Suffolk City Sch. Bd.*, 469 F. App'x 154, 159 (4th Cir. 2012) (public school teacher's liberty interest in bodily integrity was not violated when the school board knew of dangerous conditions in the school where she worked caused by excessive mold and bacteria growth); *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345 (6th Cir. 1994) (city, county, and board of public education's choice to build a school building beneath a dangerous high-voltage conductor line was merely a tort, not a constitutional violation of bodily integrity); *Goss ex rel. Goss v. Alloway Twp. Sch.*, 790 F. Supp. 2d 221, 227–28 (D.N.J. 2011) (school board's decision to cut costs by designing a cement playground, rather than a safer, non-cement playground, was not a deprivation of the liberty interest in bodily integrity). NSMA cites no cases, from the Seventh Circuit or elsewhere, that indicate otherwise.

Moreover, even if, assuming *arguendo*, NSMA's complaint had identified a deprivation of a cognizable liberty or property interest, its due process claim still could not survive a motion to dismiss, because NSMA has also failed to allege facts showing that the City's decision to implement the Naperville Smart Grid Initiative was arbitrary. Rather, the Naperville Smart Grid Initiative is part of a nationwide effort to modernize the electrical power grid, and the program's goals include increasing energy efficiency, reducing emissions, and lowering electricity consumption costs. *See* 2d Am. Compl., Ex. A, Attach. E, Statement of Project Objectives. Far from being arbitrary, the Naperville Smart Grid Initiative appears to be rationally and appropriately based on energy policy decisions within the purview of local government, and nothing in NSMA's complaint tends to suggest otherwise.

Because NSMA has identified neither a deprivation of a recognized liberty or property interest nor an arbitrary government action, NSMA has failed to state a due process claim under the Fourteenth Amendment arising from the City's decision to install smart meters through the

Naperville Smart Grid Initiative. The Court accordingly grants the City's motion to dismiss Count I of NSMA's Second Amended Complaint.

B. **Fourth Amendment Claim**

In Count II, NSMA alleges that the City's installation of smart meters capable of measuring the aggregate electricity usage of an individual home in fifteen-minute intervals constitutes an unreasonable search and an invasion of privacy under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and it has been held to guarantee individual privacy from some forms of government intrusion. U.S. Amend. IV; *see Katz v. United States*, 389 U.S. 347, 350 (1967). The Fourth Amendment, however, only protects privacy interests when a person has both an objectively and subjectively reasonable expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979). It is well established that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743–44; *see Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). This remains true even if information is provided to another on only a limited or confidential basis. *See United States v. Miller*, 425 U.S. 435, 443 (1976).

As this Court has held previously, NSMA members have no reasonable expectation of privacy in the aggregate measurements of their electrical usage. *See Naperville Smart Meter Awareness*, No. 11-C-9299, 2013 WL 1196580, at *12 (N.D. Ill. Mar. 22, 2013); *see also United States v. McIntyre*, 646 F.3d 1107, 1111–12 (8th Cir. 2011) (holding that there is no reasonable expectation of privacy protected by the Fourth Amendment in residential electricity usage records); *United States v. Hamilton*, 434 F. Supp. 2d 974, 979 (D. Or. 2006) (also holding that

there is no reasonable expectation of privacy in residential electricity records); *United States v. Porco*, 842 F. Supp. 1393, 1398 (D. Wyo. 1994) (same). Data from the City's smart meters shows only total usage and no further details than that. *See* 2d Am. Compl. ¶¶ 35, 39. Because there is no reasonable expectation of privacy in that data as a matter of law, the data is not entitled to protection under the Fourth Amendment.

NSMA nevertheless insists that data showing aggregate residential power usage in fifteen-minute intervals reveals "intimate details about [residents'] personal lives and living habits" and that an inspector of this data could make "assumptions regarding particular appliances and lighting presently in use." 2d Am. Compl. ¶¶ 38, 235. It is not possible, however, to infer from NSMA's allegations that smart-meter data conveys any information in which residents have a reasonable expectation of privacy. For example, suppose a graph displaying a Naperville resident's total power usage for one day shows a peak in usage around 7:00pm. *See id.* ¶ 39 (providing such a graph as an illustrative example). Any imagined explanation for the peak necessarily relies on nothing more than guesses and assumptions, because the electrical usage data itself does not provide any information confirming how many or what types of household appliances or devices are in use at any time. At most, someone inspecting the data might guess that at least one resident had been home at 7:00 pm. But that same guess could also be reasonably made by any member of the public walking by the residence who notices a car in the driveway or lights in the windows—that is not information that can be reasonably expected to remain private.

Additionally, NSMA cannot state a claim under the Fourth Amendment based on an unreasonable search of protected information when the allegations show that no such information has been recorded or obtained. Because NSMA has not alleged that the City is collecting any

12

information that is more detailed than aggregate usage measurements, or that is otherwise entitled to protection under the Fourth Amendment, NSMA has failed to state a claim for unreasonable search and seizure. The Court accordingly grants Defendant's motion to dismiss Count II of NSMA's Second Amended Complaint.

### C. Equal Protection Claim

In Count III, NSMA alleges that the City violated its members' rights to equal protection under the Fourteenth Amendment in two ways. First, NSMA claims that the fees imposed on the class of Naperville residents opting for non-wireless meters impermissibly penalize that class with no rational basis. 2d Am. Compl. ¶ 240. Second, NSMA claims that the City has discriminatorily retaliated against NSMA members by granting requests by non-members to retain analog meters for medical reasons while denying similar requests made by NSMA members. *Id.* ¶ 242.

The Equal Protection Clause of the Fourteenth Amendment provides that government actors may not "deny to any person . . . the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "Local governing bodies can be sued directly under § 1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). To state a claim against the City for a violation of equal protection, NSMA must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice of intentional discrimination." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotations omitted). Such factual content must be independent of allegations that merely state legal conclusions or recitations of the cause of action. *See id.* at 617–18. If the

factual allegations give rise to an "obvious alternative explanation" for the allegedly discriminatory conduct, then the complaint must be dismissed for failure to state a plausible claim to relief, rather than a merely possible claim. *Id.* at 616 (citing *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 557, 567).

Under this analytical framework, to the extent that NSMA's equal protection claim is based on the fees accompanying non-wireless meters, NSMA has failed to state a plausible equal protection claim. Although NSMA asserts that the fees accompanying non-wireless meters are "penalty fees" that "impermissibly create two unequal classes customers . . . without rational basis," *see, e.g.*, 2d Am. Compl. ¶ 240, these are bare legal conclusions that do not alone state a plausible claim for relief. *See McCauley*, 671 F.3d at 617–18 (finding that bare allegations that a city government "has an unwritten custom, practice and policy to afford lesser protection" or has a discriminatory policy that has "no rational basis" are mere legal conclusions that do not suffice to state a claim). Furthermore, NSMA alleges facts that give rise to an obvious alternative explanation for the City's imposition of fees: the one-time $68.35 installation fee corresponds to the increased cost of activating non-wireless meters, and the $24.75 monthly fee covers the additional costs the City incurs by sending a manual meter-reader to read non-wireless meters each month for utility billing purposes. 2d Am. Compl. ¶¶ 178, 181. Because NSMA has not otherwise alleged facts tending to suggest that these fees are a form of intentional discrimination, NSMA has failed to state a plausible equal protection claim arising from the City's imposition of these fees. *See McCauley*, 671 F.3d at 619 (holding that an equal protection claim based on allegations of local government action "entirely consistent with lawful conduct" was properly dismissed at the motion-to-dismiss stage).

The same cannot be said, however, of NSMA's allegations that the City has intentionally discriminated against its members by refusing their requests to retain analog meters for medical reasons, while simultaneously granting similar requests by similarly situated non-members. 2d Am. Compl. ¶ 242. Here, NSMA supports its equal protection claim with specific factual allegations of a practice of dissimilar treatment that has no obvious alternative explanation. *Id.* Additionally, NSMA alleges that representatives of the City undertook these discriminatory acts out of improper personal motives and ill-will towards NSMA, and NSMA supports these allegations with numerous factual examples. *See id.* ¶¶ 198–212. Thus, NSMA has sufficiently stated an equal protection claim based on the City's disparate treatment of members and non-members requesting to retain analog meters for medical reasons. *See Nettles-Bey v. Cars Collision Center, LLC*, No. 11-C-8022, 2013 WL 317047, at *9 (N.D. Ill. Jan. 25, 2013) (denying a motion to dismiss an equal protection claim when plaintiff alleged at least some specific facts "rais[ing] a reasonable expectation that discovery [would] reveal evidence supporting his claim") (internal quotations omitted).

For these reasons, the Court grants the City's motion to dismiss NSMA's equal protection claim to the extent that it is based on the City's decision to charge fees to residents opting to receive non-wireless meters. The Court denies the City's motion to dismiss with respect to the equal protection claim arising from the unfavorable treatment of NSMA members relative to non-members who have been allowed to retain analog meters for medical reasons.

### D. ADA Claims

Finally, NSMA claims that the City violated both Titles II and III of the ADA by implementing an electricity services program that discriminates against disabled residents and

failing to accommodate disabled residents with free analog or non-wireless meters. The Court will address each of these claims in turn.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege that (1) he is disabled under the ADA, (2) he is qualified for the benefits he sought, (3) he was denied those benefits or otherwise discriminated against on account of his disability, and (4) the defendant is a public entity. *See Hale v. Pace*, No. 09-C-5131, 2011 WL 1303369, at *4 (N.D. Ill. Mar. 31, 2011); *Torrence v. Advanced Home Care, Inc.*, No. 08-CV-2821, 2009 WL 1444448, at *3 (N.D. Ill. May 21, 2009); *Yates v. John Marshall Law Sch.*, No. 08-C-4127, 2008 WL 4358313, at *4 (N.D. Ill. Sept. 22, 2008); *Herdman v. Univ. of Ill.*, No. 96-C-8025, 1998 WL 774684, at *6 (N.D. Ill. Oct. 28, 1998).

NSMA rests its Title II claim on its allegations that the City denied qualified disabled members the benefits of safe electricity services by denying their requests to retain analog meters and failing to give them a non-wireless meter alternative at no cost. 2d Am. Compl. ¶¶ 252–54. But NSMA has pleaded itself out of its Title II claim by also alleging that disabled NSMA members were denied such benefits not on the basis of disability, but on the basis of NSMA membership.[2] *Id.* ¶ 242. *Cf. Glick v. Walker*, 272 F. App'x 514, 521 (7th Cir. 2008) (holding that the plaintiff had pleaded himself out of his Title II ADA claim when he alleged that he was denied access to group therapy not because of any disabilities, but because of his security status); *Torrence*, 2009 WL 1444448, at *3 (holding that the plaintiff had plead herself out of her Title II

---

[2] The allegation that the City discriminated against NSMA members on the basis of their membership itself is, in fact, the foundation of NSMA's equal protection class-of-one claim, discussed *supra* in Part II.C.

ADA claim when she alleged that she was denied home healthcare benefits not because of any disabilities, but because of her complaints that a healthcare provider had sexually harassed her). Because NSMA has pleaded itself out of its Title II claim, the claim must be dismissed.

NSMA has similarly pleaded itself out of its Title III claim. Title III of the ADA only applies to prohibit discrimination by private entities, and not by public entities. *See* 42 U.S.C. §§ 12181–89. As a unit of local government, the City is a public entity. *See* 2d Am. Compl. ¶¶ 13, 15; 42 U.S.C. § 12181(6) ("The term 'private entity' means any entity other than a public entity (as defined in section 12131(1) of this title)."); 42 U.S.C. § 12161(1)(A) ("The term 'public entity' means any State or local government."). Therefore, NSMA cannot bring a claim against the City under Title III of the ADA. *See Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1013 (N.D. Ill. 2002) (holding that Title III of the ADA does not apply to public entities, including city governments).

For these reasons, NSMA has failed to state a claim in Count IV by pleading itself out of court with regard to its Title II and Title III ADA claims. The Court accordingly grants the City's motion to dismiss Count IV pursuant to Rule 12(b)(6).

### III. Motion for Sanctions

The City has also moved for sanctions against NSMA pursuant to Rule 11. Rule 11(b) provides that, by signing or filing any court paper, an attorney certifies that the paper "is not being presented for any improper purpose," that the claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)–(3). The City contends that NSMA violated Rule 11 by filing a Second Amended Complaint for an improper purpose, advancing unwarranted legal arguments, and failing to allege facts with evidentiary support.

"[A]n attorney need not advance a winning argument to avoid Rule 11 sanctions." *LaSalle Nat. Bank of Chi. v. Cnty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993). "Sanctions do not inevitably flow from being wrong on the law." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993). Furthermore, a district court has "considerable discretion . . . in analyzing the case, the behavior of the attorneys, and the applicable law[ ] to determine if the requirements of Rule 11 have been met." *Id.*

Nothing in the proceedings thus far indicates that this lawsuit has been filed for an improper purpose within the meaning Rule 11(b)(1). Rather, the stated purpose of the suit—to obtain injunctive relief aimed at increasing the number of alternatives to smart-meter installation in Naperville homes—appears legitimate, given NSMA's stated organizational purpose "to advocate for a fiscally responsible and safe utility meter solution in Naperville, Illinois." 2d Am. Compl. ¶ 8. Furthermore, although the Court finds that many of the claims in NSMA's Second Amended Complaint are insufficient for purposes of Rule 12(b)(6), as discussed *supra* in Part II, NSMA's claims present many unusual or novel questions of law and are not merely frivolous claims warranting sanctions under Rule 11(b)(2). *Cf. LaSalle*, 10 F.3d at 1338 (affirming the district court's decision to deny a motion for sanctions at the motion-to-dismiss stage when "the case was factually complex and implicated legal theories in which the law, if not unsettled in terms of the basic doctrine, was not susceptible to easy application"). NSMA's Second Amended Complaint also satisfies the requirements of Rule 11(b)(3) because its factual allegations arguably had evidentiary support as shown by the inclusion of over two hundred substantive paragraphs and more than a dozen attached exhibits. *See generally* 2d Am. Compl.

Accordingly, the Court finds that NSMA has not violated the requirements of Rule 11 by filing its Second Amended Complaint. The Court therefore denies the City's motion for sanctions.

## Conclusion

For the reasons provided herein, the Court grants in part and denies in part the City's motion to dismiss pursuant to Rule 12(b)(6) [77]. The Court grants the City's motion to dismiss Counts I, II, and IV of NSMA's Second Amended Complaint. The Court denies the City's motion to dismiss Count III to the extent that it alleges an equal protection violation based on the unfavorable treatment NSMA members have received relative to non-members who have been allowed to retain analog meters for reasonable medical reasons. In all other respects, Count III of NSMA's Second Amended Complaint is dismissed. The Court also denies the City's motion for sanctions [84].

**SO ORDERED**  ENTER: 9/25/14

*[signature]*

**JOHN Z. LEE**
**United States District Judge**