# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NAPERVILLE SMART METER AWARENESS, an Illinois not-for-profit corporation, ) ) ) ) | |
| Plaintiff, ) | 11 C 9299 |
| ) | |
| v. ) | Judge John Z. Lee |
| ) | |
| CITY OF NAPERVILLE, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Naperville Smart Meter Awareness ("NSMA"), an Illinois not-for-profit corporation, has sued the City of Naperville ("the City") over the installation of smart meters in its members' homes. NSMA has moved for leave to file its Third Amended Complaint for Injunctive Relief in accordance with Federal Rule of Civil Procedure 15(a)(2). NSMA reasserts its claims pursuant to 42 U.S.C. § 1983, alleging violations of its members' rights to freedom from unreasonable search under the Fourth Amendment (Count I), and equal protection of the laws under the Fourteenth Amendment (Count III). NSMA also alleges violations of its members' rights to privacy and freedom from unreasonable search under the Illinois Constitution (Count II). For the following reasons, the Court grants in part and denies in part NSMA's motion for leave to file its Third Amended Complaint.

## Factual Background

What follows is a brief summary of the allegations set forth in the proposed Third Amended Complaint.

NSMA is an Illinois not-for-profit corporation whose stated mission is to "educate, engage and empower families, friends and neighbors to advocate for a fiscally responsible and safe utility meter solution in Naperville, Illinois." 3d Am. Compl. ¶ 8. In Naperville, all residential electrical utility services are provided by the Department of Public Utilities-Electric, a company owned and operated by the local city government. *Id.* ¶ 16. In January 2012, the Naperville Department of Public Utilities-Electric began replacing its customers' analog electricity meters with smart meters as part of a local program called the Naperville Smart Grid Initiative. *Id.* ¶¶ 25, 155. The Naperville Smart Grid Initiative is funded in part by the U.S. Department of Energy, which received $4.5 billion of federal tax dollars under the American Recovery and Reinvestment Act of 2009 for the purpose of modernizing the nation's electrical power grid. *Id.* ¶ 25.

Like analog meters, smart meters can measure customers' total residential usage for monthly billing purposes. *Id.* ¶¶ 46–47. Unlike analog meters, smart meters are also equipped with wireless radio transmitters that, when activated, send usage data via radio-frequency waves to nearby neighborhood "network access points," which then relay usage data to Naperville's Department of Public Utilities-Electric. *Id.* ¶¶ 41–42. While analog meters are capable of measuring only total accumulated consumption of energy ("total kilowatt hours used over a month"), smart meters measure aggregate electricity usage much more frequently—in intervals of fifteen minutes that "include real power in kWH and reactive power in kVARh." *Id.* ¶¶ 31, 40. Smart meters have the ability to collect data consisting of "granular, fine-grained, high-frequency type of energy usage measurements" (so-called "Interval Data") totaling to "over thousands of intervals per month." *Id.* ¶¶ 35, 43.

NSMA alleges that Interval Data allows the City to collect more than just the aggregate data necessary for billing purposes previously available through analog meters. *Id.* ¶¶ 35, 44. The

City also collects Interval Data from participants who voluntarily choose to partake in the Demand Response Program, which promotes the use of less electricity during periods of high demand. *Id.* ¶ 58.

As an alternative to having new smart meters installed in their homes, Naperville residents may opt to have their old analog meters replaced with "non-wireless meters." *Id.* ¶ 148. These "non-wireless meter alternatives" are essentially smart meters with their radio transmitters deactivated so that they emit no radio-frequency waves and must be read manually by a reader meter each month. *See id.* ¶ 149. Non-wireless meters are able to collect "the same highly detailed Interval Data" as smart meters. *Id.* Residents who choose the non-wireless meter alternative must pay a one-time installation fee of $68.35, plus an additional monthly fee of $24.75. *Id.* ¶ 150. NSMA describes the non-wireless meters as a "marginally lesser harm from among the two unsatisfactory alternatives." *Id.* ¶ 152.

NSMA asserts a number of concerns arising from the implementation of smart meters. Most notably, because smart meters are capable of taking data measurements in frequent, discrete increments, NSMA alleges that the smart meters present privacy risks that analog meters do not. *Id.* ¶ 73. Specifically, NSMA claims that a home's smart meter data history is capable of revealing "intimate details about the personal lives and living habits of NSMA members" and that an inspector of this detailed history can determine "when [residents] are away from home or asleep . . . and [when they are using] different appliance[s]." *Id.* ¶¶ 74, 88, 90. NSMA posits that through the use of mechanisms such as "energy disaggregation software" and "intuitive observation," the City—and by extension law enforcement personnel—is capable of conducting an "intrusive search of the intimate details of NSMA members' in-home activities" that goes beyond assumptions or guesses. *Id.* ¶¶ 64, 78, 81. NSMA also alleges that the radio-frequency waves that

smart meters emit present health risks to Naperville residents. In support, it claims that radio-frequency waves have been "known to cause headaches, heart palpitations, ringing in the ears, anxiety, sleep disorders, depression, and other symptoms, particularly in individuals who suffer from electromagnetic sensitivity." *Id.* ¶ 123.

Earlier in this litigation, the Court granted the City's motion to dismiss NSMA's First Amended Complaint with leave to amend some of the counts therein. After so amending, the City again moved to dismiss the claims in the Second Amended Complaint. The Court granted in part and denied in part the City's second motion to dismiss NSMA's Second Amended Complaint.

NSMA now moves for leave to file a Third Amended Complaint. In Count I, NSMA alleges the City's collection of detailed smart meter data constitutes an unreasonable search of information under the Fourth Amendment. *Id.* ¶ 197. In Count II, NSMA also alleges that the City's collection of detailed smart meter data constitutes an unreasonable search and invasion of privacy under Article I, § 6 of the Illinois Constitution of 1970. *Id.* ¶¶ 214–15. In Count III, NSMA alleges that the City has violated its members' right to equal protection both by singling out NSMA members for an additional level of unequal treatment stemming from retaliatory motives, as well as by denying requests by NSMA members to retain analog meters for medical reasons while granting similar requests made by non-members. *Id.* ¶¶ 227–28. NSMA seeks an injunction ordering the City to make analog and non-wireless meters available at no additional cost upon customer request. *Id.* Prayer for Relief ¶ 1. Because the City does not oppose the motion with regard to Count III, the Court will solely address Counts I and II.

## **Legal Standard**

Under the Federal Rules of Civil Procedure, a party may amend a complaint "with the opposing party's written consent or the court's leave," which "should [be] freely give[n]" when

"justice so requires." Fed. R. Civ. P. 15(a)(2); *see Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). Although Rule 15 provides for a liberal pleading standard, a district court may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

"A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile . . . ." *Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted); *see also Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile."). Futile repleadings include restating the same facts using different language, reasserting claims previously determined, and the inability to survive a motion to dismiss. *See Garcia*, 24 F.3d at 970 (internal citations omitted); *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). The Court may also deny leave to amend for repeated failure to cure deficiencies by amendments previously allowed—such as failing to state a cognizable claim for relief. *See Foman*, 371 U.S. at 182; *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (denial of motion to amend due to futility where the amended complaint was still "pleaded in wholly conclusory terms" and failed the "plausibility threshold.").

When the basis for denial is futility, the Court applies Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim for relief. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Under the federal notice pleading standard, a "plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). The Court must accept as true all well-pleaded allegations in the complaint

and draw all possible inferences in NSMA's favor. *Id.* Mere legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). NSMA's Third Amended Complaint must "'state a claim to relief that is plausible on its face . . . [and] above the speculative level.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## Analysis

### I. Fourth Amendment Claim (Count I)

In the proposed Third Amended Complaint, NSMA seeks to remedy the defects that had caused the Court to dismiss the past two attempts to allege Fourth Amendment violations. "District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (quoting *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013)) (internal quotations omitted).

In its prior order granting the City's motion to dismiss NSMA's First Amended Complaint, the Court held that NSMA members have no reasonable expectation of privacy under the Fourth Amendment in the aggregate measurements of their electrical usage—regardless of whether that aggregate usage is measured monthly, weekly, daily, hourly, or in fifteen-minute increments. *See Naperville Smart Meter Awareness*, No. 11-C-9299, 2013 WL 1196580, at *12 (N.D. Ill. Mar. 22, 2013). The Court found that NSMA's "assertions [did] not support a reasonable inference that the type of nonaggregate information purportedly capable of being collected by smart meters [was] actually being captured by [the City]." *Id.* at *13. NSMA, nevertheless, in its Second Amended Complaint, insisted that data showing aggregate residential power usage in fifteen-minute intervals reveals "intimate details about [residents'] personal lives and living habits." *Naperville*

6

*Smart Meter Awareness*, No. 11-C-9299, 2014 WL 4783823, at *6 (N.D. Ill. Sept. 25, 2014). The Court, however, in granting in part and denying in part the City's motion to dismiss NSMA's Second Amended Complaint, held, once again, that the aggregate data measured in fifteen-minute intervals is not entitled to protection under the Fourth Amendment. *See id.* The Court found that "[a]ny imagined explanation for [a] peak [in total power usage] necessarily relies on nothing more than guesses and assumptions, [as] the electrical usage data itself does not provide any information confirming how many or what types of household appliances or devices are in use at any time." *Id.*

NSMA now alleges the availability of new "energy disaggregation" software technology "allows for the breakdown of Interval Data collected via a smart meter into appliance-level itemized consumption," enabling the City to garner information beyond the aggregate data to which its members have consented. 3d Am. Compl. ¶ 75. NSMA further asserts that, while the City has chosen to collect data on the 15-minute interval, the smart meter is capable of collecting Interval Data in 5, 15, 30, or 60-minute intervals. *Id.* ¶ 38. Therefore, at least according to NSMA, because smart meters can now accumulate "a history of energy, power, and reactive power over thousands of intervals per month . . . , there is far more information here than an analog meter is capable of providing via its single monthly reading of energy." *Id.* ¶ 43. With these additional allegations, NSMA again alleges that the installation and use of smart meters by the City amounts to an unreasonable search of its members' homes under the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and it has been held to guarantee individual privacy from some forms of government intrusion. U.S. Amend. IV; *see Katz v. United States*, 389 U.S. 347, 350 (1967). However, "a

*Smart Meter Awareness*, No. 11-C-9299, 2014 WL 4783823, at *6 (N.D. Ill. Sept. 25, 2014). The Court, however, in granting in part and denying in part the City's motion to dismiss NSMA's Second Amended Complaint, held, once again, that the aggregate data measured in fifteen-minute intervals is not entitled to protection under the Fourth Amendment. *See id.* The Court found that "[a]ny imagined explanation for [a] peak [in total power usage] necessarily relies on nothing more than guesses and assumptions, [as] the electrical usage data itself does not provide any information confirming how many or what types of household appliances or devices are in use at any time." *Id.*

NSMA now alleges the availability of new "energy disaggregation" software technology "allows for the breakdown of Interval Data collected via a smart meter into appliance-level itemized consumption," enabling the City to garner information beyond the aggregate data to which its members have consented. 3d Am. Compl. ¶ 75. NSMA further asserts that, while the City has chosen to collect data on the 15-minute interval, the smart meter is capable of collecting Interval Data in 5, 15, 30, or 60-minute intervals. *Id.* ¶ 38. Therefore, at least according to NSMA, because smart meters can now accumulate "a history of energy, power, and reactive power over thousands of intervals per month . . . , there is far more information here than an analog meter is capable of providing via its single monthly reading of energy." *Id.* ¶ 43. With these additional allegations, NSMA again alleges that the installation and use of smart meters by the City amounts to an unreasonable search of its members' homes under the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and it has been held to guarantee individual privacy from some forms of government intrusion. U.S. Amend. IV; *see Katz v. United States*, 389 U.S. 347, 350 (1967). However, "a

person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979); *see also United States v. McIntyre*, 646 F.3d 1107, 1111–12 (8th Cir. 2011) (holding that there is no reasonable expectation of privacy in residential electricity usage records). To state a Fourth Amendment violation, NSMA must allege—beyond mere capability—that the City has gathered more than just aggregate measurements of electrical usage.

After reviewing the proposed Third Amended Complaint, the Court concludes that NSMA still falls short of alleging a legally cognizable Fourth Amendment claim. Even if smart meters are capable of capturing more than the aggregate data previously presented, as NSMA alleges, NSMA still has not alleged that the City is *actually* collecting and using the data in a way that would amount to an unreasonable search or invasion of privacy. Put another way, the purported ability of smart meters to provide a "constant conversation," *see* 3d Am. Compl. ¶ 72, between the City and its customers does not establish beyond mere "speculation" that the City has or will "plausibly" use such information in an unconstitutional manner. *See Adams*, 742 F.3d at 734.

In an attempt to fill this lacuna, NSMA claims that, using "disaggregation algorithms" currently available in the marketplace, the City could ascertain the level of detail that NSMA fears. 3d Am. Compl. ¶ 81. NSMA alleges there is "no restriction . . . to prevent the City from utilizing a disaggregation service . . . [which] would allow an even more intrusive search of the intimate details of NSMA members' in-home activities." *Id.* ¶ 78. But the fact that the City theoretically could employ this technology (if indeed it can) to glean more detailed information about a user's personal life does not in and of itself constitute an allegation—or lead to a reasonable inference—that the City is doing that here. In the same way, NSMA alleges the City's collection of Interval Data exceeds "what is necessary for customer billing purposes" without

pointing to any new information that suggests that the City is disaggregating and analyzing the information to do so. *Id.* ¶ 49.

For the same reasons, NSMA's reliance upon the "electrical power consumption" graphs is unavailing. The graphs presented by NSMA merely restate that smart meters are capable of capturing discrete details of behavior. *See id.* ¶¶ 83, 85–86. In explaining the graphs, NSMA alleges that the "[i]ncreased granularity of Interval Data provides more than ample detail for determining home occupancy, personal behaviors, and appliance usage." *Id.* ¶ 88. But here too NSMA incorrectly equates possibility with plausibility. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (internal quotations omitted).

NSMA's attempt to hinge a Fourth Amendment claim on theoretic possibilities without presenting any allegations about what the City is actually doing with the data is futile. Because NSMA has failed to allege that smart meters are relaying detailed information beyond aggregate data about members' electricity usage to the City and that the City is disaggregating the data to analyze the private lives of its residents, there is no cognizable claim upon which relief can be granted.

Some final points, NSMA's claim that its members have not consented to the "two-way, real-time communication between NSMA members and the City through use of smart meters" is a moot point. *Id.* ¶¶ 91–105. NSMA members are deemed to have consented through their usage of electricity services knowingly supplied by the City. *See Smith*, 442 U.S. at 743–44; *see also United States v. Flores-Lopez*, 670 F.3d 803, 807 (7th Cir. 2012) ("[B]y subscribing to the telephone service the user of the phone is deemed to surrender any privacy interest he may have had in his phone number."). And, although NSMA claims that it has no "meaningful choice" in

the matter, *see* 3d Am. Compl. ¶¶ 152, 204, this presupposes that the City's deployment of smart meters violates the constitutional rights of its citizens—a claim that NSMA's current allegations do not support. Lastly, the City's Demand Response Program does not change the above finding of consent as it is solely a voluntary program, and does not collect any information beyond Interval Data measurements. *Id.* ¶¶ 56–58.

For these reasons, the Court concludes that NSMA has failed to satisfy the Rule 12(b)(6) pleading requirements with respect to the Fourth Amendment claim (Count I), and thus the motion for leave to file the Third Amended Complaint with respect to that claim is denied.

**II.     Article I § 6, Illinois Constitution Claim (Count II)**

NSMA also alleges that the City's installation of smart meters capable of capturing Interval Data constitutes an unreasonable search and invasion of privacy under the Illinois Constitution of 1970. Article I, § 6 of the Illinois Constitution provides that: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. art. I, § 6. NSMA alleges that, because the Illinois Constitution contains an express privacy clause, it should not be considered co-extensive with the Fourth Amendment claim. 3d Am. Compl. ¶ 210.

NSMA's Fourth Amendment and Illinois Constitution claim, however, both hinge on the same factual core: that the information gathered and analyzed by the City through smart meters is more than just the aggregate measurements of electricity usage. *See id.* ¶ 7 ("The addition of a count under the Illinois Constitution . . . does not raise any completely new . . . cause of action, but rather is intended to compliment and bolster [the] claim under the Fourth Amendment."). Whether this information is used to allege an invasion of privacy or unreasonable search claim does not

change the fact that they depend on the same means of proof.  Because the NSMA has failed to point to any new valid factual allegations to support that there has been a search of its members' homes or an impermissible invasion of privacy through the City's use of smart meters, NSMA's motion to file leave to assert a claim under the Illinois Constitution likewise is denied.

### III.  Motion for Leave to File Counts I and II Is Denied with Prejudice

This now is NSMA's fourth attempt to state legally cognizable claims under the Fourth Amendment (Count I) and Illinois Constitution Claim (Count II).  NSMA's proposed Third Amended Complaint echoes the allegations in the First and Second Amended Complaints without advancing new substantive facts sufficient to withstand a motion to dismiss.

Where "the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse its discretion by dismissing the claim with prejudice." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (internal quotations omitted); *see also Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir. 1999) (holding that, where a plaintiff was given three opportunities to amend his complaint, and was still unable to state a claim for relief, the district court did not abuse its discretion in denying leave to amend); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, No. 14-1729, 2015 WL 2151851, at *5 (7th Cir. May 8, 2015) ("Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment . . . .").  Because the new iteration of the complaint, like the First and Second Amended Complaint, fails to move the unreasonable search and invasion of privacy claims across the plausibility threshold, the Court denies NSMA's motion for leave to file a Third Amended Complaint with regard to Counts I and II with prejudice.

## **Conclusion**

The Court grants in part and denies in part NSMA's motion for leave to file a Third Amended Complaint [102]. NSMA's motion for leave to file a Third Amended Complaint asserting an unreasonable search and invasion of privacy claim under the U.S. Constitution (Count I) and the Illinois Constitution (Count II) is denied with prejudice. Because the City did not oppose the motion with regard to NSMA's equal protection claim, the Court grants the motion solely as to Count III.

**SO ORDERED**          **ENTER:** 7/7/15

_____
**JOHN Z. LEE**
**United States District Judge**