# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NAPERVILLE SMART METER AWARENESS, an Illinois not-for-profit corporation, | )<br>)<br>) |
| Plaintiff, | ) 11 C 9299 |
| v. | ) Judge John Z. Lee |
| CITY OF NAPERVILLE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this lawsuit brought under 42 U.S.C. § 1983, Naperville Smart Meter Awareness ("NSMA"), an Illinois not-for-profit corporation, has sued the City of Naperville ("the City") over the City's installation of smart meters in NSMA members' homes. NSMA alleges that the City violated the equal protection rights of its members because the City lacked a rational basis for prohibiting its members from retaining their analog meters, while permitting other City residents to do so. NSMA seeks an injunction requiring the City to replace the smart meters in the homes of its members with analog meters at no cost.[1] The City has moved for summary judgment. For the following reasons, the Court grants the motion.

## Procedural Background

The Court presumes familiarity with the procedural history of this case, as discussed in *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606 (N.D. Ill. 2015), and *Naperville Smart Meter Awareness v. City of Naperville*, 69 F. Supp. 3d 830 (N.D. Ill. 2014).

---

[1] *See* 3d Am. Compl., Prayer for Relief, ¶ 1 [ECF No. 120]; Pl.'s Resp. Mot. Partial J. Pleadings 3 [ECF No. 173].

## Factual Background

The following facts are undisputed, unless otherwise noted. NSMA is an Illinois not-for-profit corporation that was formed to educate, engage, and empower families, friends, and neighbors to advocate for a fiscally responsible and safe utility meter solution in Naperville, Illinois. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 3, 6, 18. The City of Naperville has approximately 145,000 residents; it also has its own electric utility company. *Id.* ¶ 4.

Beginning in 2012, the City began replacing analog meters with smart meters at each residence within the City. *Id.* ¶ 5. Like analog meters, smart meters measure and record the total residential electricity usage used by a particular customer. 3d Am. Compl. ¶ 33. Unlike analog meters, however, smart meters are equipped with wireless radio transmitters that, when activated, transmit usage data at fifteen-minute intervals to the City using radio frequency technology. *Id.* ¶ 40. Installing smart meters obviates the need for the City to send in-person meter readers to residences. *See id.*

NSMA and its members oppose the installation of smart meters at their residences on several grounds. The primary reasons for their objection are twofold. First, NMSA members believe that, by using radio frequency technology, smart meters endanger the health of the home residents. Additionally, NMSA members contend that transmittal of a household's usage data to the City invades the privacy of the residents. *See id.* ¶¶ 66–80, 113–124.

The City's transition from analog meters to smart meters has been completed. As of September 2015, only two residential electric customers of the City utilize an analog meter to measure electricity usage at their home—Nancy Goodfellow and Michael Willand. *Id.* ¶¶ 14–15.

As part of this litigation, the City requested that NSMA produce its membership list. *Id.* ¶ 16. NSMA did so, and the list identified Nancy Goodfellow as a member. *Id.* ¶ 19. Michael Willand's email address appears on the membership list as well. *Id.* ¶¶ 20, 21.

## **Legal Standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## **Analysis**

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quotation omitted). In order to prevail on a "class of one" equal protection claim, NSMA's sole remaining claim in this case, a plaintiff is required to prove two things. *Id.* First, a plaintiff must show disparate treatment. *Id.*; *see Del Marcelle*, 680 F.3d at 894 ("like situations are . . . being treated differently; that is what unequal treatment . . . means."). Second, a plaintiff must demonstrate the lack of a rational basis for the challenged action. *Id.* Failure to establish disparate treatment dooms an

3

equal protection claim. *See, e.g., Ind. Petroleum Marketers & Convenience Store Ass'n*, 808 F.3d 318, 324 (7th Cir. 2015) (granting summary judgment without discussing second prong due to lack of evidence that stores in incorporated and unincorporated municipalities were treated differently with regard to cold beer sales); *Klein v. Jackson*, 477 F. App'x 317, 322 (6th Cir. 2012) (granting summary judgment without discussing second prong because plaintiffs failed to present evidence upon which reasonable jury could find disparate treatment).

The undisputed facts in the summary judgment record show that the City has not treated NSMA members differently with regard to the retention of analog meters. The parties agree that, as of September 2015, two, and only two, residents were permitted to retain analog meters: Nancy Goodfellow and Michael Willand. Def.'s LR 56.1(a)(1) Stmt. ¶¶ 14–15. The parties also agree that Goodfellow's name, as well as the email address that Willand has provided to the City as an electric customer, appear on the list of NSMA members that NSMA provided to the City. *Id.* ¶¶ 19–21.

Undaunted, NSMA attempts to argue that Goodfellow and Willand do not fit the definition of "members" that is asserted in the Third Amended Complaint, and thus they are not members of NSMA. In NSMA's view, the following statement in the Third Amended Complaint defines who is and is not a member of NSMA: "NSMA is an organization composed of more than 1,800 members who would have standing to sue in their own individual right for the allegations set forth in this Complaint ("NSMA members")." 3d Am. Compl. ¶ 10.

According to NSMA, based on this definition, Goodfellow and Willand are not "members" of NSMA because they retained analog meters and, therefore, have no standing to sue the City. But NSMA has not provided, and the Court has not found, any authority for the proposition that a plaintiff's allegation in its complaint controls the definition of an association's membership

4

throughout the litigation, particularly at the summary judgment stage. Rather, after summary judgment motions are filed, the presumption of correctness of a plaintiff's allegation falls away, and an assertion of fact must be properly supported by affidavits, declarations, or evidence. *See* Fed. R. Civ. P. 56(c), (e).

Furthermore, NSMA's argument that a person is an NSMA member only if he or she has standing to sue in this lawsuit is odd. Under this definition, a person could not become a member of NSMA, even if he or she attended all of the organization's meetings, signed all the circulated forms, and agreed with the organization's tenets, if that individual did not have "standing" to sue the City in this lawsuit. On the flipside, NSMA would consider someone to be a member, even if that person had no involvement with the group or expressed any interest in joining, so long as that that individual had "standing" to pursue the claims asserted here. NSMA points to nothing—no by-laws, articles of incorporation, or any other organizational document—to show that NSMA actually applied such an unusual definition of membership to its members.

What is more, when the City requested a list of names, addresses, phone numbers, and email addresses of all NSMA "members," *see* Def.'s Ex. 9, Interrogatories ¶ 3, NSMA responded by producing a list that included Goodfellow's name and Willand's email address. Thus, by including them on the list, NSMA represented that Goodfellow and Willand were NSMA members. Furthermore, NSMA's own exhibits show that, in their communications with the City, Goodfellow and Willand argued the same issues and submitted the same form as members of NSMA. *See* Pl.'s Ex. U, 12/30/11 Email from Goodfellow to City (complaining about same issues that NSMA raised regarding cost, health, and privacy issues of smart meters) at Defendant 003708; Pl.'s Ex. U, 7/20/12 Notice of No Consent from Willand to City (submitting same no-consent form as NSMA members to City) at Defendant 004588. Based on the undisputed facts

before the Court, the Court concludes that no rational jury could find that Goodfellow and Willand were not NSMA members or that the City treated NSMA members differently from nonmembers when it permitted electric customers to retain analog meters.

In its opposition to the City's summary judgment motion, NSMA also points to a third person, named Farah Apicella, who was allowed to retain an analog meter. In support, NSMA relies on the declaration of Jennifer Stahl, NSMA President, which states in part that "[o]n December 2, 2015 and December 3, 2015, I communicated by email with Farah Apicella and in the course of our email conversation, I was made aware by Ms. Apicella that she was allowed by the City to retain an analog meter and did so until her family sold their Naperville home in June 2015." Pl.'s Ex., Stahl Decl. ¶ 25. But this argument cannot save NSMA for two reasons.

First, it is unclear whether Apicella was or was not a member of NSMA, and NSMA provides no evidence one way or the other.[2] Second, whatever the membership status of Apicella may be, Stahl's statement recounting the substance of her communication with Apicella is classic inadmissible hearsay. Apicella's statement to Stahl that Apicella was allowed to retain an analog meter is an out-of-court statement being offered by NSMA to prove the truth of the matter asserted, and NSMA does not argue that the statement is non-hearsay under Federal Rule of Evidence 801 or satisfies any hearsay exception under Federal Rules of Evidence 803 or 804. Because this statement is based on hearsay, NSMA cannot rely on it to forestall summary judgment. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("Hearsay is

---

[2] The Court does note that NSMA's own exhibits show that the Apicella family submitted the same "no consent" form that other NSMA members submitted to the City. *See* Pl.'s Ex. U, 6/17/12 Notice of No Consent from Apicella to City, at Defendant 004556. Therefore, to the extent there is any evidence regarding this issue in the record, it indicates that the Apicellas were members of NSMA or, at least, allied with NSMA in its efforts.

inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial . . . .").

In sum, NSMA has conceded that it has brought a single equal protection claim based on its theory that the City allowed other electric customers to retain their analog meters, while prohibiting NSMA members from doing the same. The Court concludes that there is no genuine issue as to a material fact regarding whether that alleged disparate treatment occurred. Based upon the summary judgment record, the Court concludes that no reasonable jury would find that such disparate treatment took place.

Finally, in its submissions, NSMA has offered a number of facts in an effort to demonstrate that the City viewed NSMA and its members with a tremendous amount of animosity, vindictiveness, and spite. However, NSMA has unequivocally stated that the City's purported harassment of NSMA members is offered to support its contention that the City was determined to treat them differently by prohibiting them from retaining their analog meters. *See* Pl.'s Resp. Mem. Opp'n Def.'s Mot. Partial J. Pleadings 6. NSMA has neither asserted an equal protection claim based upon the City's alleged harassment of NSMA members (other than as it may relate to the ability to retain analog meters), nor has it sought injunctive relief for such a claim in its Third Amended Complaint. 3d Am. Compl., Prayer for Relief, ¶¶ 1–2. As discussed, the record indicates that the City did allow two NSMA members to retain analog meters. There is no evidence that, other than those two NSMA members, anyone else was allowed by the City to retain analog meters. Accordingly, summary judgment for the City is appropriate.

## Conclusion

For the reasons provided herein, the Court grants the City's motion for summary judgment [144]. The Court strikes as moot the City's partial motion for judgment on the pleadings [169]. *See* Def.'s Reply Supp. Partial Mot. J. Pleadings 6 (conceding the mootness of the motion). This case is hereby terminated.

**SO ORDERED**  ENTER: 9/26/16

_____
**JOHN Z. LEE**
**United States District Judge**